UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SAUNDERS,<br><br>*Plaintiff*,<br><br>v.<br><br>PATHWARD, N.A., REPUBLIC BANK & TRUST COMPANY, THE BANCORP BANK, N.A., and OURO GLOBAL, INC.,<br><br>*Defendants*. | Civil Case No.: 25-cv-1892<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Paul Saunders ("Mr. Saunders" or "Plaintiff"), by and through his undersigned counsel, alleges the following against defendants Pathward, N.A. ("Pathward"), Republic Bank & Trust Company ("Republic Bank"), The Bancorp Bank, N.A ("Bancorp"), and Ouro Global, Inc. ("Ouro") (collectively, the "Defendants" or "Netspend"):

**PRELIMINARY STATEMENT**

1. Plaintiff is a victim of unauthorized electronic fund transactions which robbed him of $8,896.23 in personal funds that were deposited in his Netspend account ("Account"), an Account and related financial service which Defendants together opened, maintained, and serviced operating as "Netspend."

2. Despite the Defendants' obligation to reimburse consumers account for unauthorized transactions, Defendants failed to provide Plaintiff with provisional credits in the amount of the stolen funds, Defendants failed to reasonably investigate Plaintiff's disputes of the unauthorized transactions, and Defendants failed to issue reimbursements to Plaintiff for the amounts of the unauthorized transactions.

3. In March 2024, an unknown perpetrator posing as a customer service agent of Netspend contacted Plaintiff and proceeded to defraud Plaintiff into sharing some of his personal information.

4. Upon information and belief, using the information provided by Plaintiff, as well as other information the perpetrator had about Netspend's security protocols and about Plaintiff, the perpetrator gained access to the Account and stole $8,896.23 from Plaintiff's Account.

5. On or about March 19, 2024, Plaintiff discovered that the funds were deducted from the Account without his knowledge or authorization and Plaintiff disputed the unauthorized transactions with Defendants.

6. Although on April 2, 2024, Netspend provided a provisional credit equal to $4,863.10 (which was less than the amount of funds for which Plaintiff sought reimbursement), Netspend did not provide Plaintiff with any means by which he could access the provisional credits in the Account.

7. In July 2024, Netspend closed Plaintiff's Account and denied his claim for reimbursement of the $8,896.23 unauthorized transactions.

8. Plaintiff bring claims against Defendants for violations of Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 *et seq.* ("EFTA"), and for declaratory judgment.

## JURISDICTION AND VENUE

9. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

10. Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. § 2201.

11. Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conduct business in this District.

## PARTIES

12. Plaintiff is a citizen of the United States, residing in Bronx County, New York.

13. Plaintiff is a "consumer," as described in 15 U.S.C. § 1693a.

14. Defendant Pathward, N.A., is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

15. Defendant The Bancorp Bank, N.A., is a corporation formed under the laws of the Kentucky and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

16. Defendant Republic Bank & Trust Company is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

17. Defendant Ouro Global, Inc., is a financial services company formed under the laws of the Delaware and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9), and Regulation E, 12 C.F.R. § 1005.2(i).

18. Defendants Pathward, Republic Bank, Bancorp, and Ouro together operate the Netspend business, issuing Netspend reloadable prepaid cards, which provide consumers with a prepaid debit card and access to an online account of their deposited funds.

## FACTUAL ALLEGATIONS

19. Several years prior to the events germane to this Complaint, Plaintiff opened a Netspend prepaid account.

20. That original Netspend account was closed, however.

21. Subsequently, despite the previous account closure, Plaintiff received benefits payments from Supplemental Security Income and Social Security Disability Insurance that were deposited with Netspend.

22. Specifically, the SSI/SSDI benefit funds were deposited in an account newly opened in Plaintiff's name that Defendants opened after receiving his deposit of funds (the "Account").

23. After learning that SSI/SSDI funds had been deposited with Netspend, Plaintiff attempted to transfer his funds out of the Account, but Netspend restricted Plaintiff from transferring the funds and closing the Account.

24. As a result, Plaintiff used the newly established Account at Netspend to pay his personal life expenses from the SSI/SSDI deposit.

25. On or about March 11, 2024, Plaintiff attempted to withdraw $100 from the Netspend card at an ATM, but the transaction was denied.

26. This denial prompted Plaintiff to call Netspend's customer service hotline, where he was informed his card was suspended due to unspecified suspicious transactions.

27. After passing security measures, Plaintiff was assured by the Netspend agent that any Account restrictions had been lifted, his current debit card ending would be deactivated, and he would receive a replacement card from Netspend in the name of security precautions.

28. On or about March 14, 2024, Plaintiff received a text message that appeared to originate from Netspend customer support, which sought verification concerning an attempt to access his Account.

29. Believing that the text was from Netspend customer service agent, Plaintiff replied with "No", confirming that he did not attempt to access his Account.

30. Plaintiff received a series of follow up texts that again appeared to come from Netspend, which again sought to secure his Account against suspicious activity and verify his identity as the owner of the Account.

31. On March 15, 2024, Plaintiff received a new Netspend debit card, but Netspend did not allow him to activate the card.

32. Trying to regain access to his Account, between March 16 and March 19, 2024, Plaintiff repeatedly interacted with the number purporting to be Netspend customer service.

33. On or about March 19, 2024, Plaintiff contacted Netspend's customer service hotline and learned that the Account had a low balance due to multiple transactions with "FanDuel" and CashApp, and a $3,500.00 transaction that was pending, but not fully posted.

34. On the same day, Plaintiff contacted Netspend's fraud department and was able to speak with an agent identified as "Cindy".

35. During the call, Plaintiff filed a dispute with Netspend concerning the unauthorized transactions in the Account that could be then identified (which in total were $8,363.10, including posted and unposted transactions).

36. Plaintiff also indicated to Netspend that his balance was equal to $8,896.23 before the fraudulent transactions, which is the amount for which he sought reimbursement.

37. On or about March 20, 2024, Plaintiff sent Netspend a list of the fraudulent transactions that could be identified (based on the information Netspend had provided to him).

38. Netspend responded to by email stating that the compromised debit card will be blocked and that a resolution would be issued no later than forty-five (45) days after the report, on or before May 3, 2024.

39. In or about the end of March 2024, Plaintiff learned that his Account balance was $0.00.

40. In total, $8,896.23 was taken from Plaintiff's Netspend Account (the "Stolen Funds").

41. By Letter dated April 2, 2024, Netspend provided Plaintiff with a provisional credit in the amount of $4,863.10.

42. However, Plaintiff remained locked out of the Account, having no access to the funds and with no active card.

43. Plaintiff repeatedly contacted Netspend by telephone and email to inform it that he could not access the account online, and, more importantly, to request access to the provisional credit by issuing a new debit card.

44. On or about April 10, 2024, Plaintiff followed up on his first claim for reimbursement with Netspend, identified additional unauthorized transactions, and reiterated to Netspend that the transactions between March 15, 2024, and March 19, 2024, were unauthorized

45. In the following days, Plaintiff received several alert emails from Netspend directing him to call the company or log in to the Account online to receive more information.

46. On or about April 17, 2024, Plaintiff was informed by email that "the issue was resolved", and the Account had a balance of $1.84.

47. In May 2024, Plaintiff was orally informed by a Netspend customer service agent that the issuance of a replacement card could not be processed due to a problem with verifying Plaintiff's mailing address.

48. Thus, in the 45 days since Plaintiff disputed the unauthorized transactions, Netspend blocked Plaintiff from accessing his account, blocked Plaintiff from accessing the provisional credits, and failed to provide reimbursements for all the unauthorized transactions in the Account.

49. On or about May 13, 2024, Plaintiff received another email from Netspend which identified the Claim as a "chargeback", a "dispute with a merchant", and that it "does not involve an error" with Plaintiff's Account.

50. The email told Plaintiff that it would take an additional forty-five (45) days to reverse the funds or until June 27, 2024.

51. The email further stated that Netspend "will not provide provisional credit or otherwise have access to the funds until the merchant dispute is resolved."

52. In July 2024, Plaintiff received a new Netspend card.

53. Days later, Netspend notified Plaintiff it would close the Account, and that Plaintiff would no longer be eligible to any of the company's services.

54. Shortly thereafter, Plaintiff received a check from Netspend for $78.00.

55. Following receipt of the check, Plaintiff contacted Netspend seeking the remainder of his funds, but Netspend customer service agents refused to discuss the Claim since the Account had already been closed.

56. On January 3, 2025, Plaintiff submitted a Complaint to the Consumer Financial Protection Bureau, which sought reimbursement of the Stolen Funds and requested all materials used in connection with Defendants' investigation of the disputed unauthorized transactions.

57. Defendants have not responded to the complaint, nor have they provided the materials used in their investigation of Plaintiff's dispute.

58. To date, Defendants have not provided Plaintiff with provisional credits (in part or in full, as Plaintiff could never access the funds), nor have Defendants provided Plaintiff with reimbursement of the Stolen Funds.

## CAUSE OF ACTION
### Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*
### (as against all Defendants)

59. Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

60. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendants bear the responsibility for unauthorized transfers and withdrawals such as the ones in question.

61. Except as provided in 15 U.S.C. § 1693g, a consumer incurs no liability from unauthorized electronic fund transfers.

62. Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

63. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

64. This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

65. The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

>(b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
>>(1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
>>
>>(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:
>>
>>>(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
>>>
>>>(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

66. In addition to the reimbursement obligation, the EFTA places an independent duty on financial institutions to investigate unauthorized transfers pursuant to 15 U.S.C. § 1693f.

67. In any such investigation, as well as any other matter regarding liability for the unauthorized transfers, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. 15 U.S.C. § 1693g(b).

68. Under the EFTA, consumers who are tricked into providing account access by a scammer posing as a bank employee are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under § 1693a(12). *See, e.g.,* Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through access device from the consumer through fraud or robbery.")

69. Thus, NetSpend's failure to reimburse Plaintiff is patently unlawful and in violation of Section § 1693g.

70. Defendants cannot meet their burden of proof here, where Plaintiff:

    a. Promptly disputed the transactions;

    b. Provided details regarding the theft;

    c. Has no history of filing false disputes; and

    d. The thefts are inconsistent with Plaintiff's pattern of use.

71. Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. *See* Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

72. Defendants have not reimbursed Plaintiff for the Stolen Funds consistent with the consumer liability cap set forth in the EFTA.

73. Defendants did not conduct a good faith investigation regarding the Stolen Funds.

74. Defendants did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendants.

75. Specifically, Defendants' conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

76. Defendants' stated basis for denial (or lack thereof) is an invalid basis under the EFTA to deny reimbursement of the Stolen Funds.

77. Defendants further violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d). *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

78. Defendants also violated the EFTA by failing to provide Plaintiff with notice of the right to request reproductions of all documents which Defendants relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

79. Defendants further violated the EFTA by failing to provide Plaintiff with the reproductions of all documents which Defendants relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

80. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

81. As a direct and proximate result of Defendants' separate and independent violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

82. As a direct and proximate result of Defendants' violations of the EFTA, Plaintiff are entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks judgment in his favor and damages against Defendants:

    A.    awarding Plaintiff actual damages, treble damages, statutory damages, costs, and reasonable attorneys' fees;

    B.    awarding Plaintiff declaratory judgment;

    C.    such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Dated: March 7, 2025

*/s/Evan S. Rothfarb*
Evan S. Rothfarb
Schlanger Law Group, LLP
60 East 42nd Street
46th Floor
New York, NY 10165
T: 212-500-6114
F: 646-612-7996
E: erothfarb@consumerprotection.net

*Attorneys for Plaintiff*